62 A.3d 163

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

**Alfred Amos PAGE, Jr.**

**Misc. Docket AG No. 70, Sept. Term, 2011.**

Court of Appeals of Maryland.

March 5, 2013.

604

Lydia F. Lawless, Assistant Bar Counsel, (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission, Maryland), for Petitioner..

Melvin Bergman, Esq., Greenbelt, Maryland, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

GREENE, J.

The Attorney Grievance Commission of Maryland ("Petitioner"), acting pursuant to Maryland Rule 16–751(a), filed a "Petition For Disciplinary Or Remedial Action" against Alfred Amos Page, Jr. ("Respondent" or "Page"), on January 20, 2012, and an "Amended Petition For Disciplinary Or Remedial Action," on April 4, 2012. Initially, Petitioner charged Respondent, stemming from his representation of Pamela Jackson ("Ms.Jackson"), with violating various Maryland Lawyers' Rules of Professional Conduct ("MLRPC"[1] or "Rule"), including Rule 1.1 (Competence)[2]; Rule 1.3 (Diligence)[3]; Rule 1.4(a) and (b) (Communication)[4]; Rule 1.15(a) and (c) (Safe-

---

1. Effective July 1, 2005, the title, Maryland Rules of Professional Conduct (MRPC) was changed to Maryland Lawyers' Rules of Professional Conduct (MLRPC). Any reference herein to the MRPC is also a reference to MLRPC.

2. MLRPC 1.1 provides: A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

3. MLRPC 1.3 provides: A lawyer shall act with reasonable diligence and promptness in representing a client.

4. MLRPC 1.4 provides in part: (a) A lawyer shall: (2) keep the client reasonably informed about the status of the matter; (3) promptly

keeping Property) [5]; Rule 1.16(a) and (d) (Declining or Terminating Representation) [6]; Rule 5.5(a) and (b) (Unauthorized Practice of Law; Multijurisdictional Practice of Law) [7]; and

comply with reasonable requests for information; and (4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law. (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

5. MLRPC 1.15 provides in part: (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created. (c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

6. MLRPC 1.16 provides in part: (a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: (1) the representation will result in violation of the Maryland Lawyers' Rules of Professional Conduct or other law; (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

7. MLRPC 5.5 provides in part: (a) A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so. (b) A lawyer who is not admitted to practice in this jurisdiction shall not: (1) except as authorized by these Rules or other law, establish an office or other systematic and continuous presence in this jurisdiction for the practice of law; or (2) hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction.

Rule 8.4(a), (c) and (d) (Misconduct) [8]. In the amended petition, Bar Counsel charges Respondent made false representations in his "Petition for Reinstatement" to this Court and violated Rule 3.3(a)(1) (Candor Toward the Tribunal) [9]; Rule 8.1(a) (Bar Admission and Disciplinary Matters) [10]; and Rule 8.4(a), (c), and (d) (Misconduct). This Court referred the matter to Judge Katherine D. Savage of the Circuit Court for Montgomery County for a hearing to determine findings of fact and conclusions of law pursuant to Maryland Rule 16–757 (Judicial Hearing).

On May 16, 2012, Judge Savage conducted an evidentiary hearing, during which Respondent was represented by counsel, and thereafter, the hearing judge issued Findings of Fact and Conclusions of Law, in which she found, by clear and convincing evidence, that Respondent's acts and omissions constituted violations of MLRPC 1.1; 1.3; 1.4(a) and (b); 1.15(a) and (c); 1.16(a) and (d); 5.5(a), (b)(1) and (b)(2); 3.3(a)(1); 8.1(a); and 8.4(a), (c) and (d). In so doing, Judge Savage made the following findings of fact regarding Respondent's background, representation of Ms. Jackson and the filing of Respondent's "Petition for Reinstatement" to this Court:

### Findings of Fact

Respondent was admitted to the Maryland Bar on June

---

8. MLRPC 8.4 provides in part: It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice[.]

9. MLRPC 3.3 provides in part: (a) A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]

10. MLRPC 8.1 provides in part: An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not: (a) knowingly make a false statement of material fact[.]

24, 1998.[1]   Mr. Page holds an undergraduate degree in accounting from Towson University, a Master's degree in finance from the University of Baltimore and a *Juris Doctor* degree from the University of Maryland.   Respondent is also a Certified Public Accountant and has taught accounting and paralegal studies at Montgomery College since 1988.[2]

At trial, Petitioner offered the testimony of Respondent and Ms. Jackson.   Petitioner's documentary exhibits were admitted without objection.   Respondent testified in his defense and also offered documentary exhibits.

### The Jackson Complaint

On May 25, 2006, Respondent entered into a retainer agreement with Ms. Jackson for the purpose of representing her in a dispute over alleged defects in the construction of Ms. Jackson's new home.   Ms. Jackson agreed to pay Respondent $5,000 as an "initial fee" with the proviso that an additional fee may be required to meet unforeseen circumstances [citations omitted here and throughout].   Respondent testified that, at the time the agreement was executed, he knew that the claim between Ms. Jackson and the builder was contested.   The retainer agreement further provided that "no hourly billings will be kept nor shall be expected."   Mr. Page did not keep time records regarding his work on Ms. Jackson's case.

Ms. Jackson made an initial payment to Mr. Page of $2,500, which Respondent deposited into his attorney trust account on June 12, 2006.   The funds were subsequently removed from the trust account.   Mr. Page presented no credible evidence that the funds were earned at the time they were removed from the trust account.

---

**1.**   He is also a member of the District of Columbia Bar, as well as a member of several associated Federal Bars in Maryland and the District of Columbia.

**2.**   Page is currently employed on a full-time basis by the Internal Revenue Service, and has held such employment since October 2007.

Less clear is what happened to the second payment of $2,500 Ms. Jackson made to Respondent on March 12, 2007 by check number 7858805. When questioned by Petitioner's counsel, Respondent testified that the signature endorsing check number 7858805 was his. When questioned by his own counsel, Respondent testified that he had no recollection of receiving check number 7858805 and that he had no idea who owned the account into which the check was deposited. In response to the Court's question as to whether or not the signature was his, Respondent testified, "Your Honor, I've got a crazy signature. I have to say that it looks, when I'm writing fast, it could very well be, but as to the signature on it, it appears to be, it looks like my signature. It appears to be my signature." Mr. Page later changed his testimony to state that the signature was not his. Respondent also testified that he frequently endorsed checks with a stamp and not a handwritten signature.

On balance, and after weighing the credibility of both Mr. Page and Ms. Jackson, the Court accepts Ms. Jackson's testimony. Her memory of events was cogent, clear and internally consistent. Mr. Page, on the other hand, appeared confused as to some events, forgetful of others, and evidenced an overall lack of clarity in recalling basic facts about this matter.

The Court therefore finds that Respondent both received and endorsed check number 7858805, and caused the check to be deposited in a non-trust account held at Wachovia Bank. Respondent presented no evidence that the funds from either payment were maintained in trust *until earned.* By his own admission, Respondent agreed that he did not maintain a client ledger, time records or any other documentation relating to the receipt, maintenance or disbursements of funds received from Ms. Jackson.

From May 25, 2006 through December 7, 2006, Ms. Jackson forwarded all relevant documents relating to her claim to Respondent. Despite Ms. Jackson's repeated requests to move her case along, Respondent continually delayed. Respondent would tell Ms. Jackson that he was

working on her case, that he was going out of town or that he was waiting for the resolution of the case filed by the county in the District Court for Prince George's County related to building permit violations. Mr. Page claims that during this time he was accumulating evidence on Ms. Jackson's behalf and meeting with Prince George's County building inspectors to evaluate their potential usefulness as witnesses in the lawsuit he was preparing to file. Respondent informed Ms. Jackson that her complaint would be filed before the end of the year, 2006.

The Court notes that the resolution of the Prince George's County case was not necessary to Ms. Jackson's case because it did not involve work that was the subject of her complaint against the builder. Despite arguing that he was accumulating evidence on Ms. Jackson's behalf between May 2006 and the time of filing, Respondent presented no billing records or communications to demonstrate his work on the case. On February 23, 2007, nearly nine months after being retained, Respondent filed a complaint on behalf of Ms. Jackson in the Circuit Court for Prince George's County. The complaint contained six counts: breach of contract, negligence, breach of implied warranty of good and workmanlike construction, fraudulent misrepresentation, negligent misrepresentation and intentional infliction of emotional distress.

Respondent testified that at the time the complaint was filed, he did not know that an expert witness would be required to establish the standard of care, breach or causation. Ms. Jackson made requests for a copy of the complaint by voicemail and e-mail. Respondent never provided Ms. Jackson with a copy of the complaint. She eventually went to the courthouse and purchased a copy from the clerk.

The Defendants were served on April 11 and 18, 2007. On May 16, 2007, Respondent filed a premature Motion for Default alleging that *all* Defendants were served on April 11, 2007. On May 17, 2007, the Defendants filed an Answer denying all material facts and any liability and asserting a

number of affirmative defenses. Respondent received the Defendants' Answer, but at the instant hearing could not recall whether he had reviewed it. The trial court denied the Motion for Default.

Beginning in or before July 2007, Respondent made multiple representations to Ms. Jackson that he would prepare and file a motion for summary judgment. He initially represented that a motion would be filed on or before October 18, 2007. Mr. Page eventually filed the motion in March 2008.

In October 2007, Respondent began employment with the Internal Revenue Service ("IRS"). IRS policy prohibited Respondent from maintaining a private practice or representing any client without first obtaining approval from the IRS. Both Mr. Page and Ms. Jackson, who had previously been employed by the IRS, testified that they were both aware of the IRS policy. Mr. Page testified that he reported his active cases to his IRS manager, as required, and that he received permission to wrap-up matters with several clients. Mr. Page agrees with Petitioner that he never received clearance to continue work on Ms. Jackson's case.

On October 23, 24, 25 and November 27, and 29, 2007, Ms. Jackson attempted to contact Respondent for updates on her case. Respondent did not respond to any of her requests for information. On December 4, 2007, Ms. Jackson was finally able to contact Respondent and Respondent assured her that the motion would be filed before Christmas. On December 18 and 19, 2007, Ms. Jackson left messages for Respondent to call her. Respondent did not return the messages.

On January 7, 2008, while Ms. Jackson's case was still pending, Mr. Page consented to a thirty (30) day suspension from the practice [of] law in the State of Maryland. On January 15, 2008, Ms. Jackson left a voicemail message for Respondent. On January 16, 2008, Ms. Jackson reached Respondent by telephone. Respondent did not inform Ms. Jackson of his suspension but did, for the first time, inform Ms. Jackson that he had begun employment with the IRS in

October 2007 [3] and noted that he would need to receive IRS approval to continue her case. The Court finds that Respondent led Ms. Jackson to believe that he had requested approval to continue her case. Mr. Page also acknowledged that Ms. Jackson repeatedly asked if approval had been granted. Respondent admitted at the instant hearing that he never sought the necessary IRS approval to continue Ms. Jackson's case.

Respondent conducted no discovery in Ms. Jackson's case. In his testimony, Mr. Page demonstrated that he did not understand what the discovery process entailed. On March 6, 2008, while suspended from the practice of law and without IRS permission to continue representing Ms. Jackson, Respondent filed "Plaintiffs Motion for Summary Judgment on the Issue of Liability" (hereafter "Motion").[4] Mr. Page never fully explained the delay in filing the Motion, but he did testify that he believed it was unlikely the motion would be granted.

The Motion contained facts outside the record and was not supported by an affidavit. The complaint itself was not verified. Respondent testified at trial that he did not know what a "verified complaint" was. The Motion contained the following misrepresentations:

1.  Paragraph 1 of the Motion states "No dispute of material facts exists on the issue of whether Plaintiff contributed to the [sic] neither Breach of Contract nor negligence." The statement is a misrepresentation. Defendant's answer at paragraph 73 provides "The Plaintiffs claims are barred by contributory negligence." Because Respondent

---

**3.** Mr. Page testified that he had discussions with Ms. Jackson about his IRS employment, prior to this February date, and that she pressured him into continuing with her case. For the reasons set forth above, as to Mr. Page's credibility, the Court accepts Ms. Jackson's account of the timeline of events in this matter.

**4.** At the time of the filing of the summary judgment motion, Mr. Page was still suspended under the Court of Appeals Order of January 7, 2008. He had failed to file for a reinstatement as required under Maryland Rule 16–781.

did not propound any discovery, at the time the Motion was filed, he had no evidence to prove the facts disputed by the Defendants.

2.  Paragraph 3 of the Motion states "No dispute of material fact exists as to whether or not Plaintiff sustained damages from the breach of contract and negligence committed by the defendants." The statement is a misrepresentation. The Defendants denied all damages.

3.  Paragraph 7, 8, 9, 10, 11, 12 and 13 of the Motion all contain facts alleged by Respondent as "not in dispute." Each fact alleged was specifically denied by the Defendants.

When questioned by Petitioner's counsel on the issue of "disputed facts" in the summary judgment motion, he stated that the facts were not disputed *by his client*. He further explained that he accepted *his own facts* and documents referenced in his argument for summary judgment. Clearly, Mr. Page has little to no understanding of summary judgment law. At one point, he testified that he did not even recall when he actually filed the Motion for Summary Judgment.

The Prince George's County court denied the Motion in an order dated May 21, 2008. On May 27, 2008, Respondent left a voicemail message for Ms. Jackson informing her that the court had denied the Motion. Mr. Page stated that "[he's] not gonna be able to proceed in litigation at this point, 'cause I still haven't received clearance from IRS to do, to do any further litigation." Ms. Jackson sent Respondent a termination letter dated June 17, 2008, requesting that her file be transferred to substitute counsel and that Respondent provide an itemized statement of all expenses incurred with a check for the balance remaining from the retainer of $5,000. Several weeks later, and after Ms. Jackson paid $50 for copying costs, Respondent delivered Ms. Jackson's file to substitute counsel. Respondent never provided Ms. Jackson with an itemization of fees and expenses, nor did he refund any unearned fees. Respondent .

never informed Ms. Jackson that he had been suspended from the practice of law.

## Petition for Reinstatement

On January 7, 2008, Petitioner and Respondent filed a Joint Petition for Suspension of Respondent, by Consent, for 30 Days in the Court of Appeals. The Joint Petition was signed by Respondent under penalty of perjury and upon personal knowledge and states "Respondent agrees to comply with Maryland Rule 16–760." Respondent testified that he reviewed the Petition prior to signing it and that he had an opportunity to and did, in fact, discuss the Petition with his attorney. The Court of Appeals, by order dated January 7, 2008, suspended Respondent from the practice of law for thirty days.

Respondent did not comply with Maryland Rule 16–760. Specifically, Mr. Page admitted at trial that he failed to adhere to subsection (c)(1) by continuing to represent Ms. Jackson. In doing so, Respondent also violated subsection (c)(2) by failing to take any steps to protect Ms. Jackson, and subsection (c)(3) by failing to conclude Ms. Jackson's matter within 15 days of the order of the Court of Appeals. In violation of subsection (c)(4), Mr. Page did not identify to Bar Counsel any currently pending client matters. Mr. Page violated subsection (c)(5) by failing to mail to Ms. Jackson and opposing counsel a letter notifying each of them of the order and the fact that he would be unable to practice law after the effective date of the order. Respondent violated subsection (c)(6) by failing to withdraw within 60 days from Ms. Jackson's pending lawsuit in the Circuit Court for Prince George's County. Respondent violated subsection (c)(8) by failing to deliver promptly to Ms. Jackson any papers or other property to which she was entitled, and subsection (c)(10) by failing to file an affidavit with the Commission.[5]

---

5. Mr. Page testified at the instant hearing that he did not know that he had to follow the Maryland Rules.

On March 28, 2011, Respondent filed a Petition for Reinstatement in the Court of Appeals. Respondent prepared and filed the Petition for Reinstatement *pro se.* Respondent asserted, at Paragraph 3, that he "has abided by Md. Rule 16–760 since the 7th day of January, 2008." Contrary to this assertion, Respondent admitted at trial that he did not comply with Md. Rule 16–760. Mr. Page also stated in his Petition for Reinstatement, at Paragraph 4, that he "has not had any cases pending before any court in the State of Maryland or any other court in the United States since the 7th day of January, 2008." Respondent admitted at the hearing that the statement was "incorrect." Respondent asserted, at Paragraph 5 of the Petition for Reinstatement, that he "has not had any legal clients or engaged in the practice of law in the State of Maryland or anywhere in the United States since the 7th day of January, 2008." Respondent again admitted at the instant hearing that the statement was "incorrect."

On April 5, 2011, Petitioner filed a Response to Petition for Reinstatement stating in part that Respondent failed to file an affidavit pursuant to Maryland Rule 16–760(c)(10) and did not provide any information concerning his compliance with Maryland Rule 16–760. On April 8, 2011, Respondent filed a Response under penalty of perjury in which he stated that, at the time of his suspension, he had "ceased the active practice of law and did not have any legal clients." Respondent admitted at hearing that the statement was false.

On April 18, 2011, Petitioner filed a Supplemental Response to Petition for Reinstatement alleging, *inter alia,* that Respondent had failed to advise Ms. Jackson or opposing counsel in Ms. Jackson's case of his suspension, that Respondent filed a Motion for Summary Judgment in Ms. Jackson's case while suspended from the practice of law and that Respondent had engaged in the unauthorized practice of law following his suspension on January 7, 2008. The Court of Appeals denied Respondent's Petition for Reinstatement by Order dated April 21, 2011.

On April 27, 2011, Respondent filed a Motion to Modify Order for Reinstatement under MD Rule 16–760(k)(2)(1) and request for Reconsideration of Order Denying Petition for Reinstatement under penalty of perjury. In his Motion to Modify, Respondent stated: "prior to voluntary suspension on or before December 31, 2007, [Respondent] informed [Ms. Jackson] that legal representation would be terminated as a condition of employment with the federal government. . . ." The Court finds that Respondent's statement was false. Respondent first told Ms. Jackson of his employment with the IRS sometime in early 2008, and Respondent informed Ms. Jackson that the representation would be terminated because of the IRS policy in a voicemail message on May 27, 2008. In his Motion to Modify, Respondent stated that he "has substantially complied with sections (c) and (d) of MD Rule 16–760 for 36 months. . . ." At the instant hearing, Respondent admitted that he had failed to comply with subsections (c) and (d), as discussed above, and that the statement in his Motion to Modify "would be a presumed inaccurate statement." The Court finds that Respondent failed to comply with Rule 16–760 at all, and that the representation that he had "substantially complied" was false. The Court of Appeals denied Respondent's Motion to Modify by Order dated May 20, 2011.

**Bar Counsel Investigation of Ms. Jackson's Complaint**

"By letter dated April 5, 2011, Respondent provided a response to Bar Counsel regarding the complaint filed by Ms. Jackson. Respondent's April 5 letter contained multiple misrepresentations. Respondent stated: I represented Ms. Jackson up through the Summary Judgment phase, which was denied. Subsequently, after I received the Summary Judgment denial I was offered and I accepted a position with the Internal Revenue Service (IRS)." The undisputed testimony at the hearing was that Respondent's employment with the IRS began in October 2007, seven months prior to the denial of the Motion for Summary

Judgment. Respondent admitted at trial that his statement to Bar Counsel was a misrepresentation.

In his letter of April 5, 2011, Respondent stated to Bar Counsel that he, "applied for permission to continue [Ms. Jackson's] case along with my teaching as an adjunct professor at an area college. IRS granted me my continued teaching employment but never granted permission to continue any legal cases, including Ms. Jackson's case." At trial, Respondent admitted that he had never applied to the IRS for permission to continue Ms. Jackson's case following his employment with them in October 2007. Further, in his letter of April 5, 2011, Respondent stated to Bar Counsel that "to the best of my knowledge, I closed all of my legal cases on or before December 31, 2007, including Ms. Jackson's case." At trial, Respondent admitted that this statement to Bar Counsel was false.

## Conclusions of Law

### The Jackson Complaint

Judge Savage entered detailed conclusions of law concerning both complaints. As to Ms. Jackson's complaint, the hearing judge began by pointing out that Respondent violated MLRPC 1.1 on numerous occasions. According to Judge Savage, Respondent's Motion for Default in the Jackson case was premature, and his Motion for Summary Judgment did not meet the requirements of Maryland Rule 2–501. Page did not understand fully the requirements for filing a Motion for Summary Judgment because he claimed that there were no disputes of material fact when, in reality, the builder disputed all the facts in Ms. Jackson's complaint. Further, Judge Savage concluded:

Respondent's testimony made it clear that he did not understand the legal meaning of "facts not in dispute." When questioned on the subject, Respondent admitted that Defendants did, in fact, dispute all facts asserted by Ms. Jackson in her complaint. Respondent attached the Consent Order to Enforce Compliance with the Building Code

from the District Court case to the Motion. The Consent Order was not certified or authenticated. Mr. Page testified that he "felt the County proved my case." He later testified that it was not "proof positive" but rather "strong evidence for a complaint." The Consent Order addressed permit violations of the builder, and did not constitute proof of either a breach of contract claim or a negligence claim in Ms. Jackson's case. Additionally, Respondent testified that he "didn't think [the summary judgment motion] was going to be approved" but that he wanted to "preserve the record."

Respondent failed to pursue any discovery on behalf of Ms. Jackson's claim. At trial, Respondent testified that his "discovery" consisted of exhibits attached to the original complaint and that he "didn't have any other additional discovery to produce because [he] provided it with the complaint." Respondent did not request any discovery from the defendants and it is unclear whether or not Respondent even understands the legal meaning of discovery. These facts combined establish, by clear and convincing evidence, that Mr. Page violated MRPC 1.1 in his handling of Ms. Jackson's case.

**MLRPC 1.3. Diligence.**

Respondent violated Rule 1.3 on multiple instances in the course of Ms. Jackson's representation. At the outset of the representation, Respondent represented to Ms. Jackson that he would gather documents, prepare and send a demand letter to the builder and investigate whether the potential defendants had filed for bankruptcy protection. Respondent failed to do any of the tasks outlined. The Court finds that Respondent's nine-month delay in filing Ms. Jackson's complaint is a violation of Rule 1.3. Ms. Jackson provided Mr. Page with multiple documents at the outset of their relationship, and Respondent could provide no creditable explanation for the delay.

The complaint eventually filed by Respondent required expert witness testimony to establish either a breach of

contract or negligence. Respondent failed to consult with or retain an expert. Additionally, and as noted above, Respondent failed to prepare or propound any discovery on behalf of Ms. Jackson after the complaint was filed. The record indicates that the Circuit Court never issued a scheduling order in Ms. Jackson's case but, given Ms. Jackson's repeated requests to Respondent to move the case forward, the Court finds that Respondent's failure to pursue discovery of Ms. Jackson's complaint in any meaningful manner following its filing was a violation of Rule 1.3.

Mr. Page's claim that he spent the time between May 2006 and February 2007 investigating Ms. Jackson's claim is not credible. It is clear to the Court that he did little to nothing in furtherance of his client's claim, and is therefore found to be in violation of MRPC 1.3.

### MLRPC 1.4. Communication.

The Court finds Respondent violated Rule 1.4(a)(2) and (3) by failing to keep Ms. Jackson reasonably informed about the status of her case, by failing to promptly return her phone calls and emails, by failing to promptly respond to her requests for information and by failing to provide copies of documents requested. The Court finds Respondent violated Rule 1.4(a)(4) by failing to inform Ms. Jackson that he could no longer represent her in October 2007 when his employment with the IRS began and by failing to inform her that he was suspended from the practice of law in January 2008.

The Court finds Respondent violated Rule 1.4(b) by failing to explain the terms of his representation to Ms. Jackson to the extent reasonably necessary to permit her to make informed decisions about the representation. The retainer agreement prepared by Respondent and executed by Ms. Jackson fails to adequately outline the terms of the representation and the fees that would be associated with the representation. The retainer agreement refers to the $5,000 fee as an "initial fee" and then as a "flat rate." The retainer agreement goes on to provide that, "An additional

fee or retainer may be required if [sic] becomes evident that I must prepare for unforeseen contestion [sic]." The retainer agreement does not in any [way] define what "unforeseen contestion" is or provide what additional fee may be required, whether an additional flat fee or hourly fee and if so how that fee would be calculated.

The Court finds that Respondent violated Rule 1.4(b) by failing to adequately explain the summary judgment process to Ms. Jackson. Respondent admitted at trial that, at the time the Motion for Summary Judgment was filed, he did not think it would be successful. Respondent failed to convey that information to Ms. Jackson, depriving her of the ability to make informed decisions about her case.

Respondent testified that he maintained appropriate communication with Ms. Jackson, noting that she frequently sent him documents and e-mails prior to the filing of the lawsuit. The Court finds that, while there may have been communication prior to the filing of the suit, the bulk of this communication was from Ms. Jackson to Mr. Page and that during the pendency of the suit, during the transition to employment with the IRS, and during the suspension, Mr. Page violated MRPC 1.4.

**MLRPC 1.15. Safekeeping Property.**

The Court finds Respondent violated Rule 1.15(a) by failing to deposit and maintain certain funds received in trust. While the initial payment of $2,500 was deposited into Respondent's IOLTA account, Respondent was unable to provide any documentation or other credible evidence that the fees were maintained in trust until earned. There is no evidence that the second payment of $2,500 was either deposited or maintained in trust until earned. The Court has previously found that Ms. Jackson did, in fact, make the second payment of $2,500 to Mr. Page. He acknowledged his endorsement on the check, albeit in a contradictory fashion; the amount was debited from Ms. Jackson's account; and Mr. Page made no further request for any unpaid balance. Mr. Page has failed to maintain the necessary and appropriate documentation of this receipt of funds.

The Court finds Respondent violated Rule 1.15(c). Ms. Jackson did not give her informed consent, confirmed in writing, for Respondent to deposit unearned funds in any account other than a trust account.

**MLRPC 1.16. Declining or Terminating Representation.**

The Court finds Respondent violated Rule 1.16(a) by failing to terminate the representation and withdrawing from Ms. Jackson's matter following his suspension from the practice of law on January 7, 2008. Additionally, the Court finds Respondent violated Rule 1.16(d) by failing to promptly deliver to Ms. Jackson her papers, property and requested accounting following her termination of the representation on June 17, 2008.

Respondent's suggestion of perhaps obtaining a new attorney in early 2008 falls short of the expectations of MRPC 1.16, which requires a lawyer to cease representation and take reasonably practicable steps to protect a client's interests. While Mr. Page did eventually provide a copy of his case file to Ms. Jackson, for a fee, Respondent did not return unearned fees, or provide any accounting as to how said fees were earned. Mr. Page failed to provide reasonable notice of his inability to continue in the representation either because of the IRS prohibition, which became apparent in October 2007, or when his license to practice law was suspended in January 2008. Instead, Respondent informed Ms. Jackson that the representation would be terminated because of the IRS policy in a voicemail message on May 27, 2008.

**MLRPC 5.5. Unauthorized Practice of Law; Multijurisdictional Practice of Law.**

Respondent conceded at trial that he violated Rule 5.5 and the Court finds accordingly. The Court of Appeals suspended Respondent from practice for a thirty-day period on January 7, 2008. Respondent failed to apply for reinstatement at the expiration of the thirty-day period. At trial, Respondent testified that he worked on the Motion for

Summary Judgment in January and February of 2008. On March 6, 2008, while suspended from the practice of law, Respondent filed the Motion for Summary Judgment.

**MLRPC 8.4. Misconduct.**

The Court, having concluded that Respondent violated several of the Rules of Professional Conduct including MRPC 1.1, 1.3, 1.4, 1.15, 1.16 and 5.5, concludes that Respondent has also committed misconduct in violation of Rule 8.4(a). *See Att'y Grievance Comm'n v. Foltz,* 411 Md. 359, 411, 983 A.2d 434, 465 (2009).

The Court finds Respondent violated Rule 8.4(c) during the course of his representation of Ms. Jackson. In January 2008, Respondent first notified Ms. Jackson that he had accepted and begun employment with the IRS. Respondent chose to deceive Ms. Jackson as to whether he actually had permission from the IRS to continue the representation. Respondent admitted at trial that he never sought permission from the IRS to continue Ms. Jackson's case. Respondent knew, based on Ms. Jackson's repeated requests as to whether or not the IRS had granted approval, that Ms. Jackson believed that he had requested permission to continue the representation. In May 2008, Respondent left a voicemail message for Ms. Jackson in which he stated that he "still [hadn't] received clearance from IRS to do, to do any further litigation." This voicemail message was an intentional misrepresentation. He, by his own admission, had never sought such clearance. The Court finds Respondent's conduct, as it relates to his employment with the IRS and the information that he provided to Ms. Jackson, to be basically dishonest.

The Court further finds that Respondent violated Rule 8.4(d) for the reasons outlined as violations of 8.4(c).

### Bar Counsel Complaint

**MLRPC Rule 3.3. Candor Toward the Tribunal.**

The Court finds Respondent violated Rule 3.3(a)(1) for the reasons stated in the MRPC 8.1 analysis below.

**MLRPC 8.1. Bar Admission and Disciplinary Matters.**

The Court finds Respondent knowingly made false statements of material fact to the Court of Appeals in his Petition for Reinstatement filed March 28, 2011.[6] Specifically, the statement made by Respondent in paragraph 3 that he "had abided by Md. Rule 16–760 since the 7th day of January, 2008" was false. Respondent did not comply with subsections (1)(2)(3)(4)(5)(6)(8)(9)(10)(12) of Rule 16–760(c). The statement made by Respondent in paragraph 4 that he "has not had any cases pending before any court in the State of Maryland or any other court in the United States since the 7th day of January, 2008" was false. As admitted at trial, Respondent continued to represent Ms. Jackson, whose matter was pending in the Circuit Court for Prince George's County until June 2008, five months following his suspension from the practice of law. Finally, the Court finds the statement made in paragraph 5 that he "has not had any legal clients or engaged in the practice of law in the State of Maryland or anywhere in the United States since the 7th day of January, 2008" is false. As discussed, Respondent continued to represent Ms. Jackson after January 7, 2008.

As established at trial, Ms. Jackson's complaint was not forwarded to Respondent until after he filed his Petition for Reinstatement. It is clear to the Court that when Respondent filed his petition, he knew that he had represented Ms. Jackson while suspended. The totality of the evidence and the particular timeline involved here, leads this Court to conclude that Respondent made his misrepresentations to the Court of Appeals while having no reason to believe that Bar Counsel already knew of his unauthorized practice. Once Respondent was put on notice that Bar Counsel, in fact, knew about his unauthorized practice, Respondent made additional intentional misrepresentations to the Court

---

6. There is an inherent intent to deceive when an attorney uses words that s/he knows are untrue. *Att'y Grievance Comm'n v. Siskind,* 401 Md. 41, 68, 930 A.2d 328, 344 (2007).

of Appeals in an attempt to cover up and excuse his unauthorized practice of law.

The Court finds Respondent knowingly made false statements of material fact to the Court of Appeals in his Response to Bar Counsel filed April 8, 2011. Specifically, the statement of Respondent in paragraph 2 that he "did not have any legal clients at the time of the agreed suspension" was false.

The Court finds Respondent also knowingly made false statements of material fact to the Court of Appeals in his Motion to Modify Order filed April 27, 2011. Specifically, Respondent stated in paragraph 3 of the motion that prior to his suspension, Respondent "informed client [sic] that legal representation would be terminated as a condition of employment with the federal government before any suspension was contemplated." The Court finds that the first time Respondent informed Ms. Jackson that the representation would be terminated was in his voicemail message to Ms. Jackson on May 27, 2008, more than five months following his suspension. Additionally, the Court finds Respondent's statement in paragraph 4, that he had "substantially complied with sections (c) and (d) of 16–760" to be false. As discussed above, Respondent did not comply with any subsection of Rule 16–760.

The Court finds Respondent knowingly and intentionally made false statements of material fact to the Court of Appeals in violation of Rule 8.1(a).

Additionally, the Court finds Respondent knowingly made false statements of material fact to Bar Counsel during the course of the investigation of Ms. Jackson's complaint.

Respondent, in his reply to Ms. Jackson's complaint stated that he accepted a position with the IRS following the receipt of the denial of the summary judgment motion. The undisputed evidence at trial supports a finding that Respondent began employment with the IRS in October 2007, more than seven months prior to the denial of the summary judgment motion. Additionally, Respondent stated to Bar Counsel: "To the best of my knowledge, I closed all of my

legal cases on or before December 31, 2007, including Ms. Jackson's case." Respondent's position that he misunderstood the Court of Appeals or Bar Counsel's inquiry is not credible. The Court finds that the statements to Bar Counsel were false and made purposefully with the intent to deceive.

## Discussion

In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record. *Attorney Grievance Comm'n v. Jarosinski*, 411 Md. 432, 448, 983 A.2d 477, 487 (2009). We review the hearing judge's conclusions of law *de novo*. Rule 16–759(b)(1). In our review of the record, the hearing judge's findings of fact will not be disturbed unless clearly erroneous. Rule 16–759(b)(2); *Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 50, 891 A.2d 1085, 1095 (2006). Petitioner takes no exception to the hearing judge's findings of fact and conclusions of law. Respondent, however, raises various exceptions both to the hearing judge's findings of fact and conclusions of law. Respondent acknowledges that the hearing judge found that Page "received an additional twenty-five hundred ($2,500.00) dollar retainer fee, in the form of a bank check from M & T Bank, ... purportedly mailed by the bank to Page, ... on behalf of [Ms. Jackson]." According to Respondent, the evidence presented was not clear and convincing that he received or deposited the second check for $2,500.00. Respondent assails Bar Counsel for failing to obtain the M & T Bank records concerning the disputed check, as well as Respondent's history concerning his bank account with M & T bank. We overrule Respondents's exception.

Further, Respondent acknowledges that the "[h]earing [j]udge concluded that Jackson's testimony that she sent Page the [second] check for [$2,500.00] was more credible than Page's testimony that he did not receive the check." Notwithstanding the hearing judge's finding of fact, the Respondent contends that Ms. Jackson's testimony alone was not sufficient to satisfy the clear and convincing standard of proof. The

hearing judge, however, did not see the issue as one of quantum of proof, but one of credibility of the witness's testimony. We agree with the hearing judge.

On many occasions we have said that the hearing judge may "pick and choose" what evidence to believe. *Attorney Grievance Comm'n v. Byrd,* 408 Md. 449, 473, 970 A.2d 870, 883 (2009) (stating that it is firmly established that a hearing judge "may elect to pick and choose which evidence to rely upon, when assessing the credibility of witnesses" and factual findings are "entitled to significant deference"). Here, Judge Savage was persuaded that "Respondent both received and endorsed check number 7858805, and caused the check to be deposited in a non-trust account held at Wachovia Bank." Initially, Respondent testified that the endorsement on the check "appears to be, it looks like my signature." Thereafter, when asked again by the court, "[d]o you think that's your signature or not[,]" Respondent changed his testimony and said, "[n]o, your honor." The hearing judge was not bound to accept Respondent's response as truthful. As the hearing judge found, Respondent admitted that "he did not maintain a client ledger, time records or any other documentation relating to the receipt, maintenance or disbursements of funds received from Ms. Jackson." The evidence presented was sufficient to satisfy the clear and convincing standard of proof. Respondent excepts to the hearing judge's conclusions of law as to MLRPC 1.1, 1.3, 1.15, 1.16, 8.4(c) and (d). He concedes that the hearing judge was correct in concluding that he violated Rules 1.4, 5.5 and 8.4(a). As to the challenges raised, we overrule Respondent's exceptions.

■ Rule 1.1 requires an attorney to provide competent representation. According to Respondent, he did not violate Rule 1.1 because, in his view, the legal skill he provided on behalf of Ms. Jackson was reasonable under the circumstances, even if he filed a premature motion for default (incorrectly cited as a motion to dismiss in Respondent's Request for Exceptions), the motion for summary judgment had deficiencies and he did not conduct any discovery. For

example, the hearing judge considered the reasons offered for Respondent's decision to file a motion for summary judgment. The hearing judge deduced from Respondent's explanation that Respondent did not understand that summary judgment would not be an appropriate remedy in a case where there was a genuine dispute between the parties as to the material facts. The hearing judge also noted that Respondent filed, as an attachment to his summary judgment motion, a Consent Order that was neither certified nor authenticated. Also, based on Respondent's testimony during the disciplinary proceedings, he apparently did not understand the meaning of discovery as a tool for gathering information to prosecute his client's case. Given Respondent's explanation for the legal decisions he made during Ms. Jackson's trial court proceedings and his failure to properly use the legal tools available to advance his client's case, we overrule Respondent's exception to Rule 1.1.

■ Rule 1.3 requires that "A lawyer shall act with reasonable diligence and promptness in representing a client." Respondent concedes that his services to Ms. Jackson may not have been prompt, yet he challenges the conclusion that his services were unreasonable. According to Respondent, "[t]here was no evidence offered by Bar Counsel as to what effect, if any, the 'delay' of time between Page's retention, and the filing of the Jackson complaint had upon the litigated matter." Furthermore, Respondent contends, although the hearing judge rejected as not credible Respondent's assertion that the delay in filing the complaint was related to Respondent's investigation of Ms. Jackson's complaint, the evidence was not "clear and convincing [ ] that the delay was solely from a lack of Page's diligence." In other words, "Page contends that the delay, if any, in filing the complaint for [Ms.] Jackson herein, and the lack of discovery herein were reasonable under the circumstances . . . ."

The hearing judge concluded that Respondent's nine-month delay in filing Ms. Jackson's complaint violated Rule 1.3. She also found that Respondent "represented to Ms. Jackson that he would gather documents, prepare and send a demand letter

to the builder and investigate whether the potential defendants had filed for bankruptcy protection." The hearing judge also found that Respondent failed to perform any of the tasks mentioned above. The hearing judge pointed out that the complaint that Respondent filed on behalf of Ms. Jackson required expert testimony to prove a breach of contract or negligence. Respondent never consulted with nor retained an expert. Similarly, Respondent never conducted any discovery, in a situation where discovery was necessary, to advance his client's case. From these missteps in the representation of Ms. Jackson, the hearing judge concluded that Respondent failed to act with reasonable diligence and promptness in representing Ms. Jackson's interests. Accordingly, we overrule Respondent's exception to Rule 1.3.

Respondent challenges the hearing judge's conclusion that he violated the safekeeping Rule. Rule 1.15 essentially requires an attorney to hold a client's property separate from the lawyer's own property. The lawyer is also required to create and maintain records of the account funds and property kept by the lawyer. And, "[u]nless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred." Rule 1.15; *See Attorney Grievance Comm'n v. James*, 385 Md. 637, 653, 870 A.2d 229, 239 (2005).

In the present case, the hearing judge found that Respondent received an initial payment of $2,500.00, in advance, for his services to Ms. Jackson and approximately nine months later received an additional advance of $2,500.00 for a total advanced fee of $5,000.00. The initial payment was deposited in trust, however, there was no credible evidence that the funds had been earned at the time of withdrawal. As to the second payment, although Respondent disputes that it was ever received by him, the hearing judge concluded from the evidence that Respondent endorsed the check for the second

payment of $2,500.00 and deposited the funds into a non-trust account. Even if we were to assume for purposes of argument that Respondent did not receive the second payment of $2,500.00, he fails to address his removal of the initial payment of $2,500.00 from trust before those funds were earned. Similarly, Respondent fails to address his lack of recordkeeping, accounting or lack of information in relation to the initial retainer fee paid. Not only is it a violation of Rule 1.15 to remove unearned fees from trust before the fees are earned, but it is also a violation of Rule 1.15 for an attorney to fail to maintain records and to monitor or maintain client funds in the lawyer's possession. *See Attorney Grievance Comm'n v. Mba–Jonas,* 397 Md. 690, 701, 919 A.2d 669, 676 (2007). We overrule Respondent's exception to Rule 1.15.

Respondent excepts to the hearing judge's conclusion that Page violated Rule 1.16, both because he failed to terminate his relationship with Ms. Jackson after Page was suspended on January 7, 2008, and because Page did not promptly return Ms. Jackson's file to her after that professional relationship had terminated. The hearing judge explained that Respondent did not comply with the expectations of Rule 1.16 when he failed to cease representation and take reasonable steps to protect his client's interests under the circumstances.

Respondent had a duty to protect his client's interests. Under the circumstances, as the hearing judge found, protecting the client's interest required Respondent to cease representation and take reasonable steps to protect Ms. Jackson's interests. Giving paramount consideration to Ms. Jackson's interests, she was entitled, under the rules of professional responsibility, to the benefit of adequate representation during the period of Respondent's suspension from the practice of law and to the return of any unearned portion of attorney fees that she paid in advance, upon Respondent's withdrawal from her case. Respondent had an obligation also, as the hearing judge concluded, "to provide reasonable notice of his inability to continue in the representation either because of the IRS

prohibition, which became apparent in October 2007, or when his license to practice law was suspended in January 2008." Respondent did not inform Ms. Jackson that he would terminate his representation because of the IRS policy until May 27, 2008, approximately four months after his suspension and more than seven months after Respondent was aware of the IRS policy. Although "Page did eventually provide a copy of his case file to Ms. Jackson, for a fee, [Page] did not return unearned fees, or provide any accounting as to how said fees were earned." We overrule Respondent's exception to the Rule 1.16 violation.

Respondent excepts to the conclusion that he violated Rules 8.4(c) and (d). He concedes that "he was careless and negligent in his overall handling of the Jackson case, but he contends that the import of Rule 8.4 requires conduct that is somewhat more contumacious than merely falling below the standards that the public normally expects of attorneys." According to Respondent, his misconduct was neither "egregious [n]or intentional." As to Ms. Jackson's complaint, the hearing judge found that Respondent "chose to deceive Ms. Jackson as to whether he actually had permission from the IRS to continue the representation." Judge Savage explained that Respondent's conduct was dishonest and that he intentionally misrepresented to Ms. Jackson that he had not received approval from the IRS to work on her case. This is so because throughout the course of his representation of Ms. Jackson, Respondent never sought the necessary approval from the IRS and Respondent knew that Ms. Jackson believed that he had requested approval, but was merely waiting for the IRS to respond.

We agree with the hearing judge that, as it relates to Respondent's employment with the IRS and the information that Page provided to Ms. Jackson, Respondent's conduct was infected with dishonesty. In *Attorney Grievance Comm'n v. Zeiger*, 428 Md. 546, 556, 53 A.3d 332, 338 (2012), we pointed out that a misrepresentation is made when an attorney knows that a statement is false and cannot be the product of mistake,

misunderstanding, or inadvertence. We held in *Attorney Grievance Comm'n v. Webster*, 402 Md. 448, 473–74, 937 A.2d 161, 175–76 (2007) that "unlike matters relating to competency, diligence, and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse." Finding no reason to set aside the hearing judge's findings of fact and conclusions of law, we overrule Respondent's exception to the conclusion that his violation of Rules 8.4(c) and (d) were intentional.

As to Bar Counsel's complaint, Respondent excepts to the hearing judge's conclusion that Respondent "knowing[ly] and intentionally made false statements to the Court of Appeals in his reinstatement petition filed on March 28, 2011." Again, Respondent concedes that his "false representations in his reinstatement petition, and to Bar Counsel during the Jackson Complaint investigation, w[ere] careless and negligent. . . ." Nonetheless, he contends that the evidence presented at his disciplinary hearing was not clear and convincing. According to Respondent, the evidence "that the false statements were made deliberately or with such reckless disregard for the facts [to support] a violation of Rules 3.3 and 8.1" was not clear and convincing. To bolster his argument, Respondent asserts that he did not believe he was still suspended thirty (30) days after January 7, 2008, or when he filed his reinstatement petition on March 28, 2011. He maintains that he erroneously "believed [that his license to practice] was 'automatically' reinstated thirty (30) days after his suspension." In addition, Respondent argues that he was not aware of the existence of the Jackson complaint, filed on June 26, 2008, "until Bar Counsel's response to his reinstatement petition disclosed that the Complaint had been filed three (3) years previously." In essence, according to Respondent, it was his lack of awareness and confusion that precipitated his reinstatement misrepresentations and his responses to Bar Counsel. Thus, Respondent maintains, because he was confused, "his conduct was devoid of the conscious, deliberateness

designed to intentionally deceive contemplated by the Rules 3.3 and 8.1."

In applying Rules 3.3(a) and 8.1(a) to the facts of the case, Judge Savage found from the evidence that on January 7, 2008, Respondent was suspended by consent from the practice of law in Maryland for a period of thirty (30) days. On March 6, 2008, while Respondent was still suspended from the practice of law, he continued to represent Ms. Jackson and filed a motion for summary judgment on her behalf in the Circuit Court for Prince George's County. The hearing judge concluded that when Respondent asserted in his Petition for Reinstatement that he "had abided by Md. Rule 16–760 since the 7th day of January, 2008," he made a knowingly false statement of fact. She also found that Respondent's statement in paragraph 4 of the Petition for Reinstatement that he "has not had any cases pending before any court in the State of Maryland or any other court in the United States since the 7th day of January, 2008" was also a knowingly false statement of fact because Respondent continued to represent Ms. Jackson after January 7, 2008. The hearing judge was further convinced that Respondent "made additional intentional misrepresentations to the Court of Appeals in an attempt to cover up and excuse his unauthorized practice of law."

Judge Savage reasoned that when Respondent filed his Petition for Reinstatement he "ha[d] no reason to believe that Bar Counsel already knew of [Page's] unauthorized practice." Thus, unaware that Bar Counsel knew in April 2011 that Respondent had engaged in the unauthorized practice of law, Judge Savage concluded that Respondent knowingly made a false statement in paragraph 2 of his response to Bar Counsel's allegation when Respondent stated he "did not have any legal clients at the time of the agreed suspension." The hearing judge also concluded from the evidence that Respondent knowingly made false statements of material fact in his "Motion to Modify Order filed April 27, 2011." In paragraph 3 of the motion addressed to this Court, Respondent stated that prior to his suspension, he "informed client [sic] that legal representation would be terminated as a condition of employ-

ment with the federal government before any suspension was contemplated." According to Judge Savage, this assertion was knowingly false because Respondent did not inform Ms. Jackson "that the representation would be terminated" until "his voicemail message to Ms. Jackson on May 27, 2008, more than five months following his suspension." Notably, the hearing judge concluded that Respondent's assertions in his Petition for Reinstatement that he had "substantially complied with sections (c) and (d) of 16–760" were false.

Finally, the hearing judge concluded that "[Page] knowingly made false statements of material fact to Bar Counsel during the course of the investigation of Ms. Jackson's complaint[,]" and the statements to Bar counsel were "made purposefully with the intent to deceive." Judge Savage found that Respondent stated in his reply to Ms. Jackson's complaint that "he accepted a position with the IRS following the receipt of the denial of the summary judgment motion." That statement, as the hearing judge found, was false because Respondent began employment with the IRS in October 2007, prior to the denial of the motion for summary judgment. Further, as Judge Savage found, Respondent's written response to Bar Counsel was also false when he stated: "To the best of my knowledge, I closed all of my legal cases on or before December 31, 2007, including Ms. Jackson's case." Ultimately, based upon the hearing judge's assessment of Respondent's credibility, she rejected Respondent's position that he misunderstood Bar Counsel's inquiry. Accordingly, we cannot say that Judge Savage's conclusions in this regard were clearly erroneous.

We have held that Rules 3.3 and 8.1 are violated when a lawyer makes an admission to a tribunal he or she knows is untrue and makes false statements to induce Bar Counsel to believe the lawyer did not violate the MLRPC. *Attorney Grievance Comm'n v. Pak,* 400 Md. 567, 602, 929 A.2d 546, 566–67 (2007); *Attorney Grievance Comm'n v. Lee,* 393 Md. 385, 409–13, 903 A.2d 360, 374–77 (2006). Judge Savage's conclusion that Respondent violated Rules 3.3 and 8.1 was

legally correct. Therefore, we overrule Respondent's exceptions to those violations.

## Sanctions

In the case, *Attorney Grievance Comm'n v. Bleecker*, 414 Md. 147, 994 A.2d 928 (2010), we outlined our task in evaluating the appropriate sanction to impose in attorney disciplinary matters:

We evaluate every attorney grievance matter on its own merits, taking into account the facts and circumstances involved. We have consistently iterated that the goal of attorney discipline is protection of the public, rather than the punishment of the erring attorney. We protect the public through sanctions against offending attorneys in two ways: through deterrence of the type of conduct which will not be tolerated, and by removing those unfit to continue in the practice of law from the rolls of those authorized to practice in this State. The public is protected when the sanction imposed is commensurate with the nature and gravity of the violations and the intent with which they were committed. Therefore, we must consider the nature of the ethical duties violated in light of any aggravating or mitigating circumstances.

414 Md. at 176, 994 A.2d at 945 (internal citations and quotation omitted).

The essence of the misconduct in the instant case is Respondent's dishonesty as it relates to his communications with Ms. Jackson regarding his employment with the IRS and his suspension from the practice of law. The dishonest communications with Ms. Jackson are compounded by Respondent's intentional misrepresentations to this Court in Respondent's effort to gain reinstatement to practice law and in response to Bar Counsel's investigation of Ms. Jackson's complaint. Although Respondent maintains that his misconduct is the result of negligence rather than intentional misrepresentations of facts, the hearing judge found to the contrary on the basis of clear and convincing evidence.

Petitioner recommends that we impose a sanction of disbarment and Respondent recommends that we impose a sanction of indefinite suspension, with the right to reapply after ninety (90) days. Respondent, however, cites to no cases where we have imposed such a sanction for an attorney's intentional deceitful conduct. In determining the appropriate sanction, we have looked to the aggravating factors found in Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions. These include:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of victim;

(i) substantial experience in the practice of law;

(j) indifference to making restitution.

Bar Counsel asks that we consider the aggravating factors mentioned above in arriving at the appropriate sanction. Notably, this is not Respondent's first disciplinary offense. In January 2008, Respondent consented to a suspension from the practice of law for thirty (30) days for failing to timely respond to Bar Counsel's requests for information in violation of MLRPC 8.1(b). Secondly, Respondent's misconduct, involving the Petition for Reinstatement and Bar Counsel's investigation, was motivated by dishonesty and selfishness. The hearing judge found that once Respondent became aware that Bar Counsel knew that he was engaged in the unauthorized practice of law, he made additional intentional misrepresentations to this Court in an attempt to conceal and/or excuse his misconduct.

According to Bar Counsel, as to the third and fourth factors, Respondent engaged in a pattern of misconduct and committed multiple offenses, including failing to represent his client competently, failing to keep the client reasonably informed, misrepresentation of the facts to the client, failing to preserve client funds and account for those funds while in the attorney's possession, failing to protect the client's interest when the attorney had been suspended from the practice of law and failing to be an honest and trustworthy attorney. Fifth, Respondent admitted at the disciplinary hearing that he made false statements to Bar Counsel during the disciplinary process. Sixth, Bar Counsel contends that, although Respondent conceded at his disciplinary hearing that he filed a motion for summary judgment on behalf of his client at a time when he was suspended from the practice of law, Respondent fails to acknowledge or appreciate the wrongful nature of his conduct in any other respect. According to Bar Counsel, Respondent "has substantial experience in the practice of law, having been admitted to the Maryland Bar on June 24, 1998[,]" and Respondent harbors "an indifference to making restitution to Ms. Jackson."

We agree that the aggravating factors are implicated. Respondent has a prior suspension and his motives in this case were dishonest and selfish. He has engaged in a pattern of deceit and has committed multiple offenses. Respondent obstructed the disciplinary investigation by intentionally misrepresenting the facts to Bar Counsel and further obstructed the disciplinary proceedings by making false assertions in his Petition for Reinstatement filed in this Court. He fails to acknowledge or does not appear to appreciate the wrongful nature of his conduct in representing his client during a time when it was unlawful or when he was conflicted by his employment with the IRS. The client deserved better. Respondent has failed to reimburse the client any portion of the $5,000.00 advanced fee.

As to mitigation, the hearing judge found that Respondent "admitted that many of his assertions to the Court of Appeals and Bar Counsel were incorrect." In addition, the hearing

judge concluded that because "Page's computer 'crashed' during the time period following his handling of the Jackson case and the subsequent investigation of the Attorney Grievance Commission," Respondent "*may* have lost evidence that could have assisted in his defense, although nothing specific was suggested at the instant hearing."

Taking into consideration the overwhelming nature of the deceitful conduct and the aggravating factors, the appropriate sanction is disbarment. Respondent's concealment of his inability to represent Ms. Jackson because of the IRS policy and his suspension from the practice of law is most egregious. This is compounded by Respondent's dishonesty when dealing with Bar Counsel during the investigation phase of the proceedings and his misrepresentation of the facts in his Petition for Reinstatement filed in this Court. In *Attorney Grievance Comm'n v. Bleecker*, 414 Md. at 180, 994 A.2d at 947 (involving violations of MLRPC 1.1, 1.3, 1.4, 1.16(a), 3.3(a)(1), 8.1(b), and 8.4(a), (c) and (d)), we held that an attorney who "systematically concealed from his client and the court that the statute of limitations had expired on [his client's] claim ... warrant[ed] the gravest sanction, disbarment, for the protection of the public." Likewise, disbarment is warranted in this case. Often we have said that "[c]andor and truthfulness are two of the most important moral character traits of a lawyer." *Attorney Grievance Comm'n v. Myers*, 333 Md. 440, 449, 635 A.2d 1315, 1319 (1994) (citations omitted). Intentional dishonest conduct, involving misrepresentations to the courts, can warrant disbarment. *Attorney Grievance Comm'n v. McClain*, 406 Md. 1, 19–21, 956 A.2d 135, 145–46 (2008). Absent any compelling extenuating circumstances warranting a sanction less than disbarment, we have consistently said that disbarment is the appropriate sanction. Accordingly, we impose the sanction of disbarment.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO RULE 16–761, FOR WHICH**

SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST ALFRED AMOS PAGE, JR.